```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


ROSE URE MEZU                 *
                              *
                              *
v.                            *    Civil Action No. WMN-11-3072
                              *
                              *
MORGAN STATE UNIVERSITY       *
     et al.                   *
                              *
   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

**MEMORANDUM**

Before the Court is Defendants' motion to partially dismiss the First Amended Complaint.  ECF No. 26.  The motion is fully briefed.  In addition to this briefing, the Court held a hearing on Plaintiff's "Emergency Motion for Preliminary Injunction" shortly after this action was filed, from which the Court was able to glean some additional insight into the nature of Plaintiff's claims.  Upon review of the pleadings and the applicable law, the Court determines that the motion will be GRANTED in part and DENIED in part.

Plaintiff Dr. Rose Mezu has been employed by Defendant Morgan State University (MSU) since 1993.  She identifies her national origin as Nigerian, her ethnicity as Igbo, and her race as "commonly perceived as 'black' in the United States."  Am. Compl. ¶¶ 8, 75. Defendant Armada Grant is the director of the human resources/personnel department for MSU and Defendant Dolan

Hubbard is the chair of the English and Language Arts Department, the department in which Plaintiff teaches. Plaintiff's relationship with her employer has been contentious as evidenced by the fact that this is Plaintiff's fourth lawsuit against MSU.  See Mezu v. Morgan State Univ., Civ. No. JFM-02-3713, 264 F. Supp. 2d 292 (D. Md. Mar. 31, 2003) (claims under Title VII,[1] Equal Pay Act,[2] and FMLA[3] dismissed on motion), aff'd 75 Fed. App'x 910 (4th Cir. 2003); Mezu v. Morgan State Univ., Civ. No. WDQ-08-1867 (D. Md. Mar 23, 2009) (claims under Title VII and Equal Pay Act dismissed on motion), aff'd, 367 Fed. App'x 385 (4th Cir. 2010); Mezu v. Morgan State Univ., Civ. No. WMN-09-2855 (D. Md.) (claims under Title VII and FMLA stayed in this Court pending interlocutory appeal of discovery matter) (hereinafter, the 2009 Action).

In this suit, Plaintiff's primary allegation is that Defendants retaliated against her for filing the 2009 Action. See First Am. Compl., "Background Statement" ("[t]he events described herein arose in retaliation against Dr. Mezu for filing [the 2009 Action]") and ¶ 12 (after Plaintiff filed the

---

[1] Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

[2] 29 U.S.C. § 206(d) et seq.

[3] The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.

2009 Action, MSU "immediately began a pattern of harassment and retaliation against Dr. Mezu for filing the 2009 [A]ction"). Her specific complaints relate to her teaching loads, an incident where Defendant Hubbard encouraged Plaintiff's students to file complaints against her, and the manner in which Defendants have handled her requests for family and medical leave.

On the issue of teaching loads, Plaintiff alleges that she has been routinely assigned teaching overloads since the filing of the 2009 Action.  This allegation is premised on her particular interpretation of the Faculty Manual for MSU's College of Liberal Art.  Plaintiff asserts that the number of credits considered as her teaching load should include the credits awarded graduate students when they register for thesis or dissertation classes for which Plaintiff serves as the advisor.

The incident involving Defendant Hubbard occurred during the Fall 2011 Semester.  While Plaintiff was in New Orleans caring for a hospitalized daughter, Hubbard allegedly met with one of Plaintiff's classes and misled them to believe that Plaintiff had not made arrangements for their class to be covered and encouraged them to go to the English Department office and file complaints against Plaintiff.  Several days

later when Plaintiff arrived at her classroom, Hubbard was again there talking to the students and he then proceeded to confront and criticize Plaintiff in front of the students.

Regarding Defendants' handling of her most recent request for FMLA leave, Plaintiff complains that Defendants initially refused to approve her request despite the fact that she had certification from her doctor indicating that she was suffering from hypertension and anxiety, aggravated by other medical issues including malaria.  Instead of approving her leave based upon that certification, Defendants required Plaintiff to obtain a second opinion from an MSU-appointed physician, Dr. Julie Rich.  Dr. Rich not only concurred with Plaintiff's doctor's opinion, but she was concerned enough about Plaintiff's high blood pressure that Dr. Rich directed Plaintiff to go immediately to the emergency room.  Plaintiff further complains that MSU failed to timely pay Dr. Rich's bill and has never paid the bills related to her emergency room visit.  As a result, these bills were sent to a collection service.

Based on this and related conduct, Plaintiff brought this action under Title VII, the FMLA, 42 U.S.C. § 1983, and 42 U.S.C. § 1981.  In Count I, Plaintiff brings a Title VII retaliation claim, without specifying against which Defendants the claim is asserted.  Counts II and III bring claims for FMLA

Interference and FMLA retaliation.  Count IV is asserted against Defendant Grant and brings an equal protection claim under § 1983.  In this count, Plaintiff specifically cites Grant's requirement that she obtain a second opinion in support of her FMLA claim and his "refus[al] to pay Dr. Mezu's Emergency Room bills."  Am. Compl. ¶¶ 61, 63.  She claims that MSU does not treat other faculty who are not Nigerian women of Igbo origin in this manner.  In Count V, Plaintiff brings a similar equal protection claim against Defendant Hubbard arising from his alleged interactions with her students.  Finally, in Count VI, Plaintiff alleges that she had a contract with MSU as expressed in the Faculty Manual and that Defendant Hubbard breached that contract when he routinely assigned Plaintiff a teaching overload.  This contractual interference, Plaintiff contends, was "in part because of her race, and in part as retaliation against her earlier lawsuits against [MSU] raising the claim that she was discriminated against because of her race."  Id. ¶ 79.  This claim is brought pursuant to 42 U.S.C. § 1981.  Defendants move pursuant to Rule 12(b)(6) to dismiss all but Count I of the Amended Complaint.[4]

---

[4] Because it is not clear against which Defendants Count I was brought, Defendants argued in their motion that Title VII claims cannot be brought against the individual defendants.  Plaintiff concedes that point and states that she has no intention of

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "Detailed factual allegations" are not required, but allegations must be more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action[.]" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). In considering such a motion, the court is required to accept as true all well-pled allegations in the complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

As to Counts II and III, Defendants rely on the recent Supreme Court decision in Coleman v. Maryland Court of Appeals, 132 S. Ct. 1327 (2012), for the proposition that States and agencies of the States are entitled to immunity under the

---

pressing the Title VII claims against the individual defendants. ECF No. 30 at 23.

Eleventh Amendment from suits for damages under the self-care provision of the FMLA.  While critical of the decision itself, Plaintiff concedes that, under Coleman, her FMLA claims are barred.  Counts II and III will be dismissed.

Defendants move to dismiss the equal protection/§ 1983 claims on the ground that the Amended Complaint fails to identify any non-Nigerian, non-Igbo faculty members who were treated differently than Plaintiff.  Specifically as to Count IV, Plaintiff has not identified any faculty members whose medical bills were paid by MSU.  As to Count V, Defendants argue that Plaintiff fails to identify any faculty members that were treated more favorably by Defendant Hubbard.  As to both counts, Defendants also argue they are entitled to qualified immunity.

In opposing the motion as to these two counts, Plaintiff relies on a line of cases that have recognized the validity of "class-of-one" equal protection claims "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Opp'n at 9 (citing Village of Willowbrook v. Olech, 528 U.S. 562 (2000) and Willis v. Town of Marshall, 70 Fed. App'x 227 (4th Cir. 2008)).  Under this "class-of-one" line of cases, a plaintiff need not prove that she was treated differently because she is a member of a particular

7

class, but simply that she was treated differently than every other employee.

"Class-of-one" claims, however, are not applicable in the public employment context. <u>Engquist v. Oregon Dep't of Agric.</u>, 553 U.S. 591 (2008). The Supreme Court in <u>Engquist</u> concluded that, while the Equal Protection Clause does apply to public employees, "the class-of-one theory of equal protection — which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review — is simply a poor fit in the public employment context."  553 U.S. at 605.  Employment decisions, the Court noted, "are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify."  553 U.S. at 604.  Thus, while the consideration of these subjective concerns would be unreasonable as ground for other governmental decisions, "treating seemingly similarly situated individuals differently in the employment context is par for the course."  <u>Id.</u>

If Plaintiff rested her equal protection claims solely on the class-of-one theory, the Court would agree they should be dismissed.  Plaintiff, however, offered this theory in the alternative to her claim that she was treated differently because of her nationality, ethnicity and race.  <u>See</u> Opp'n at 9.

Although her Amended Complaint emphasizes that Defendants' conduct was in retaliation for her previous lawsuits, she also alleges in the Amended Complaint that she was treated differently than those outside her class.  Am. Compl. ¶¶ 63, 71.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (internal quotations omitted).  To state a claim under the Equal Protection Clause, a plaintiff must plead sufficient facts to "'demonstrate that [s]he has been treated differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional and purposeful discrimination.'"  Williams v. Hansen, 326 F.3d 569, 576 (4th Cir. 2003) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)).

The Court finds that the allegations in the Amended Complaint sufficiently state equal protection claims and defeat Defendants' assertion of qualified immunity.  Defendants' primary argument against the equal protection claims is that the Amended Complaint fails to specifically identify those outside Plaintiff's class who were treated differently.  The Court

observes, however, that in this particular context, it would be difficult to make those identifications without discovery. Through discovery in the 2009 Action, Plaintiff has been able to identify employees whose FMLA leave requests seem to have been handled differently than Plaintiff's.  As to the claim based upon Hubbards' interactions with her students, the Court should be able to infer, at least at this stage in the proceedings, that Hubbard does not go into other teachers' classrooms to foment revolt.

   While allowing these equal protection claims to proceed, the Court notes the difficulties Plaintiff will need to overcome to ultimately establish these claims.  First, Plaintiff herself advances factors other than her West African heritage that generated Defendants' animosity toward her.  She suggests that Hubbard's animosity arose at least in part out of "professional jealousy as [Plaintiff] has been instrumental in developing courses and conferences on African writers, a field in which he purports to be an expert."  Opp'n at 21.  While proof of that motivation might be otherwise objectionable, it would not support an equal protection claim.  Also, as noted above, Plaintiff strongly suggests that her treatment was in retaliation for her filing the previous lawsuits.

In addition, the Court notes that some of Defendants' actions which Plaintiff challenges are probably not even wrongful. As to MSU's failure to pay for her emergency room visit, Plaintiff has pointed to no basis under which MSU would be required to do so. While Dr. Rich might have advised her to go to the emergency room after doing the examination requested by MSU, that does not create a duty on the part of MSU to pay for the treatment Plaintiff received at the emergency room. As to Plaintiff's claims of course overloads, Plaintiff's interpretation of the Faculty Manual seems farfetched. The testimony at the preliminary injunction hearing indicated that no other professor's teaching load was calculated as Plaintiff suggests and, in fact, MSU is currently in the process of evaluating for all faculty just how to factor the advising of graduate students into a professor's teaching load.

Notwithstanding these difficulties, the Court will not dismiss the § 1983 counts at this time. Similarly, the Court will permit Plaintiff's § 1981 claim to go forward but notes that this claim is particularly vulnerable to these same difficulties. Section 1981 provides that all persons within the jurisdiction of the United States have "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." § 1981(a). "To make and enforce contracts" is

defined as the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b).  Thus, to prove a § 1981 claim, a plaintiff must establish that: (1) "the defendant intended to discriminate on the basis of race," and (2) "the discrimination interfered with a contractual interest."  Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir. 2006) (internal citations omitted).

As contractual interests, Plaintiff points to her rights to a particular teaching load and compensation for teaching overloads.  These purported rights are based on her interpretation of the Faculty Manual.  She alleges that non-West Africans have not been required to teach overloads without additional compensation.  Again, while the Court is skeptical that the Faculty Manual has been applied to any faculty in the manner advocated by Plaintiff, the Court will permit the claim to go forward, accepting as true the allegations in the Amended Complaint and drawing all reasonable inferences in Plaintiff's favor.

Accordingly, Counts II and III will be dismissed, as will Count I to the extent it attempts to assert claims against the

individual defendants.  The motion will be otherwise denied.  A separate order will issue.

```
                          _____/s/_____
                          William M. Nickerson
                          Senior United States District Judge
```

Dated:  August 21, 2012