```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND


ROSE URE MEZU                    *
                                 *
                                 *
                                 *
v.                               *   Civil Action No. WMN-11-3072
                                 *
                                 *
MORGAN STATE UNIVERSITY          *
     et al.                      *
                                 *
   *    *    *    *    *    *    *    *    *    *    *    *    *    *    *
```

**MEMORANDUM**

Before the Court is Defendants' Motion for Summary Judgment. ECF No. 89. Plaintiff filed a substantial opposition to the motion, ECF No. 92, and Defendants elected not to file a reply and the time for so doing has long expired. Upon review of the pleadings and the applicable law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion will be granted in part and denied in part.

Plaintiff Dr. Rose Mezu has been employed by Defendant Morgan State University (Morgan State) since 1993. In August 2013, she was made a full professor, although she asserts that this was a promotion that was long overdue. Defendant Armada Grant is the director of the human resources/personnel department for Morgan State and Defendant Dolan Hubbard is the chair of the English and Language Arts Department, the department in which Plaintiff teaches. This is the fourth

lawsuit that Plaintiff has filed against Morgan State. Plaintiff's third suit, Mezu v. Morgan State Univ., Civ. No. WMN-09-2855 (D. Md.) (the 2009 Action), asserts claims under Title VII[1] and the FMLA[2] and is scheduled for trial to commence on June 2, 2014.[3]

In this suit, Plaintiff alleges that Defendants discriminated against her on the basis of her "race, color, religion, sex, or national origin," Am. Compl. ¶ 5, and retaliated against her for filing the 2009 Action. Plaintiff asserts three specific forms or incidents of discriminatory or retaliatory conduct: (1) the consistent assignment of teaching overloads without compensation; (2) the manner in which Defendants, specifically Defendant Grant, handled Plaintiff's request for FMLA leave during the Spring 2011 Semester; and, (3) an incident in October of 2011 in which she alleges Defendant Hubbard riled up her students and encouraged them to file complaints against her. The Amended Complaint asserts four causes of action: retaliation under Title VII (Count I); an

---

[1] Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

[2] The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.

[3] Additional detail concerning Plaintiff's first two suits is set out in a July 29, 2013, Memorandum of this Court in the 2009 Action. ECF No. 196.

Equal Protection claim under 42 U.S.C. § 1983 against Grant related to the handling of Plaintiff's FMLA leave request (Count IV); an Equal Protection claim under 42 U.S.C. § 1983 against Hubbard related to his October 2011 interactions with Plaintiff's students (Count V); and a claim under 42 U.S.C. § 1981 against Hubbard based on his role in assigning her teaching overloads (Count VI).[4]

While denying, in part, Defendants' motion to dismiss at an earlier stage of these proceedings, the Court expressed some doubt as to the ultimate merits of Plaintiff's claims. The Court was particularly skeptical of the method by which Plaintiff arrived at the conclusion that she was assigned a teaching overload, finding her interpretation of the Faculty Manual "farfetched." ECF No. 32 at 11. The Court also noted the lack of any basis for Plaintiff's claimed entitlement to certain benefits, such as her claim that Morgan State was responsible for her emergency room bill. Id. In addition, the Court found that Plaintiff's allegations pointed as strongly to the conclusion that professional jealousy was the likely motivator behind some of the complained-of conduct as to the conclusion that this conduct arose from any discriminatory or

---

[4] The Amended Complaint also contained two counts under the FMLA, Counts II and III, which were dismissed on Eleventh Amendment grounds. See ECF No. 32 at 6-7.

retaliatory animus.  <u>Id.</u> at 10.  While the Court retains some of those same reservations, the Court will deny Defendants' motion for summary judgment as well, at least as to some elements of her claims.  On the record as it now stands, particularly given the lack of any reply from Defendants, disputes of material fact remain rendering summary judgment inappropriate.  <u>See</u> Fed. R. Civ. P. 56 ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

For example, on the issue of Plaintiff's alleged teaching overload, Defendants argued in their motion that, under the terms of the Faculty Manual, Plaintiff was never assigned an overload.  The Manual defines "teaching load" as follows:

> In the College of Liberal Arts, the prescribed teaching load for faculty is twelve credits undergraduate courses per semester, or fifteen to eighteen contact hours in undergraduate courses per semester in specified special programs (e.g. Freshman Studies Program).
>
> The teaching load for graduate faculty in the College of Liberal Arts is nine credits per semester.  Faculty members are considered graduate faculty when teaching two or more graduate classes in a given semester. Faculty members teaching one graduate course per semester may be granted a reduced teaching load of nine credits when they, in one semester or over a period of several semesters, have served as advisors to four master's thesis students or two doctoral dissertation students.

Pl.'s Ex. 1, 2009 Faculty Manual, Operational Policies & Procedures, at 22.  Thus, if a faculty member is teaching only undergraduate courses, a standard load is four three-credit classes per semester.  If a faculty member teaches at least two graduate classes, a standard load would be three three-credit courses.  If a faculty member is teaching only one graduate course, the standard load remains four three-credit courses, unless the faculty member is also advising four master's thesis students or two doctoral dissertation students, in which case, the faculty member "may be granted a reduced teaching load" of three three-credit courses.

   Defendants submitted with their motion a summary chart purporting to show the classes taught by Plaintiff and two other faculty members in Plaintiff's department, Dr. Linda Carter and Dr. Julie Nerad, for the Fall 2009, Spring 2010, Fall 2010, and Spring 2011 Semesters.  Defs.' Ex. B.  According to that chart, Plaintiff was not assigned an overload for any of those semesters.  For the Fall 2009 Semester, when she was on FMLA leave taking care of her daughter, she taught no classes.  For the Spring 2010 Semester, Plaintiff was assigned four undergraduate classes.  While the chart also shows three advisement or dissertation "classes" for that semester, it also shows that no students were enrolled in those classes as

5

advisees.  For the Fall 2010 Semester, the chart indicates that Plaintiff was assigned three undergraduate classes and was advising two doctoral students.  For the Spring 2011 Semester, she taught one graduate class and advised one doctoral student.[5]

According to the summary chart supplied by Defendants, Drs. Carter and Nerad taught equal or heavier loads than Plaintiff.  For example, for the Spring 2010 Semester, Dr. Carter appears to have taught one undergraduate class, two graduate classes, and advised four masters students and one doctoral student.  For the Spring 2011 Semester, Dr. Nerad appears to have taught three undergraduate classes, one graduate class, and advised at least two doctoral students.  This would appear to have been an overload.

In opposing Defendants' motion, Plaintiff continues to argue that any time spent advising graduate students is extra work that must be compensated.  See Pl.'s Opp'n at 2-5, 25-26.

---

[5] Plaintiff states that, for the Spring 2011 Semester, she was initially assigned three undergraduate classes, one graduate class, and the advisement of two doctoral students, which would have been an overload under the terms of the Faculty Manual. ECF No. 92 at 5; see also Pl.'s Ex. 7, 1/27/2011 Memo from Hubbard to Grant.  One of the two doctoral students had health issues, however, and was not expected to be working on her dissertation that semester. Pl.'s Ex. 7.  In response to Plaintiff's FMLA request to be assigned a one-half load, two of her undergraduate classes were assigned to other faculty members.  Defendant Hubbard testified that Plaintiff also ended up not teaching the other undergraduate class. Defs.' Ex. H, Hubbard Dep. at 153.  It also appears that there were only two students in Plaintiff's graduate class.  See Pl.'s Ex. 7 at 3.

6

Defendants have stated that this is not the practice of the university, see Hubbard Dep. at 146, and the Court notes that Plaintiff's position seems inconsistent with the Faculty Manual on which she so heavily relies. While the Manual permits a reduction in teaching load for advising four or more Master's students or two or more Doctoral students, the clear implication is that advising fewer graduate students does not entitle the faculty member to reduced class assignments or additional compensation.

Plaintiff, however, also raises other challenges to Defendants' motion that have some merit or, at the least, warranted some reply from Defendants. Plaintiff notes that Defendants have provided no evidentiary support for the summary chart they submitted with their motion. Opp'n at 27. She also notes that Magistrate Judge Gesner, who presided over the discovery in this matter, previously addressed the adequacy of a similar summary chart and ordered Defendants to produce "any supporting documents related to teaching schedules, and requests for assignments of overloads, for all departments of the MSU College of Liberal Arts, for the entire time period requested." 5/28/13 Letter Order at 2. Plaintiff represents that, despite

7

that Order, Defendants refused to produce supporting documents related to requests or assignments of overloads. Opp'n at 27.[6]

Most significant, and most in need of some response, is Plaintiff's observation that, even if the summary chart were accurate and supported, and shows that Drs. Carter and Nerad taught overloads for some semesters, "[t]his does not answer the key question of whether first, these faculty volunteered to do so, and second, how it affected their compensation." Id. Notwithstanding this pointed critique of their evidence and argument, Defendants filed no reply. Thus, the Court is left with unanswered questions. It could be that Drs. Carter and Nerad were indeed paid for a teaching overload and that explains the lack of a reply from Defendants. Or, it could be that Defendants' failure to properly respond to discovery prevents them from now submitting the evidence that would refute that argument. Or, the absence of a reply from Defendants could simply reflect the somewhat haphazard or cavalier approach exhibited by counsel in these lawsuits. Regardless of the reason, these unresolved questions leave as a disputed fact whether Plaintiff was treated differently than other faculty members.

---

[6] The undersigned is aware that in a subsequent order, Judge Gesner ruled that there were "no outstanding discovery issues to be resolved" with regard to Defendants' production of responsive documents. ECF No. 78, 10/10/14 Letter Order.

Similar unresolved questions remain regarding Defendant Grant's handling of Plaintiff's FMLA leave request and Defendant Hubbard's interactions with Plaintiff's students in October 2011.  While perhaps neither of these incidents would independently support a retaliation claim, Plaintiff is correct that this conduct must be viewed in the context of Defendants' overall treatment of Plaintiff.  As this Court has noted, "it behooves courts to 'consider whether based upon the <u>combined effect</u> of alleged events, a reasonable worker could be dissuaded from engaging in protected activity.'"  <u>Smith v. Vilsack</u>, 832 F. Supp. 2d 573, 585 (D. Md. 2011) (quoting <u>Test v. Holder</u>, 614 F. Supp. 2d 73, 84 (D.D.C. 2009), emphasis in <u>Test</u>).

While the Court will permit Plaintiff's Title VII retaliation claim to go forward, the Court finds that Defendants are entitled to summary judgment on Plaintiff's § 1983 claims and the § 1981 claim to the extent that these claims are premised on the allegation that Plaintiff was discriminated against because of her membership in some identifiable and protected class.  While Plaintiff alleges that she was discriminated against on the basis of her "race, color, religion, sex, or national origin," Am. Compl. ¶ 5, she has provided no evidence to support that allegation.

9

The Court notes at the outset that, while alleging discrimination on the basis of religion, Plaintiff never identifies her own religion, much less that of any other Morgan State employee who may have been treated differently. Plaintiff does identify her national origin as Nigerian, her ethnicity as Igbo, and states that she is "a member of the race commonly perceived as 'black' in the United States." Am. Compl. ¶¶ 8, 75. Plaintiff also repeats throughout her Amended Complaint that she was treated differently because she is a "Nigerian woman of Igbo origin" but, in opposing the motion for summary judgment, offers little evidence or argument that Defendants' conduct towards her was based on her gender, race, or national origin. For the most part, Plaintiff does not even identify the race or national origin of those she believes were treated more favorably than she.

In an attempt to support her claim of gender discrimination, Plaintiff does cite the deposition testimony of Adele Newson-Horst in which Newson-Horst stated that "I am not the first woman, nor will I be the last woman to say that" Defendant Hubbard is the source of a hostile work environment. Newson-Horst Dep. at 25. Newson-Horst, however, also referred to the hostile work environment created by Hubbard more generally: "Everybody's fear – people are in fear of

retaliation." Id. The Court also notes that in the few instances where Plaintiff actually identifies the individuals that she believes Defendant Hubbard treated more favorably, those individuals were women. While she complains that Hubbard denied her request for a sabbatical, she acknowledges that he granted the requests of two female faculty members, Linda Carter and Meena Khorana. Opp'n at 9-10. While she complains that she was not compensated for teaching an overload, the only two faculty members that she cites as having been paid for teaching an overload were also women, Leiza Brown and Kimberly Collins. Opp'n at 30-31.[7]

The clear thrust of Plaintiff's allegations in this action is that she was retaliated against for filing the 2009 Action, not that she was discriminated against on some other basis. See Am. Compl. Background Statement ("The events described herein arose in retaliation against Dr. Mezu for filing the FMLA and Title VII claims found in [the 2009 Action]"); ¶ 12 ("Morgan State immediately began a pattern of harassment and retaliation

---

[7] The Court made a similar observation in dismissing Plaintiff's discrimination claim in the 2009 Action. The Court noted that "Plaintiff has offered little to support the conclusion that Defendants' conduct towards her was based on her race, gender, or national origin. The Complaint is devoid of specific allegations related to sex or race." 2009 Action, 3/18/10 Mem., ECF No. 24 at 25. Just as in this action, the faculty members that Plaintiff identified in the 2009 Action as receiving more favorable treatment also were both women. Id.

11

against Dr. Mezu for filing the 2009 Action."); ¶ 41 (same); ¶ 46 (same); ¶ 57 (same). The arguments made in her opposition reinforce that conclusion. While she has taught at Morgan State since 1993, she only alleges she was assigned uncompensated teaching overloads since 2009. This would be consistent with her contention that she was retaliated against for filing the 2009 Action, but not that Defendants had something against women or Nigerians or Igbos.

Accordingly, to the extent Plaintiff's § 1983 or § 1981 claims assert discrimination based on race, color, religion, gender or national origin, the Court will grant the summary judgment motion as to those counts. This appears to encompass the entirety of Plaintiff's § 1983 claims. In both § 1983 counts, which she captioned as "Equal Protection" claims, Plaintiff alleges that Defendants treated her "differently and adversely in part because of her status as a Nigerian woman of Igbo origin." Am. Compl. ¶¶ 64, 71. Thus, Counts IV and V will be dismissed in their entirety.

In her § 1981 count, however, Plaintiff alleges that "Hubbard interfered with Morgan State's contractual duties to Dr. Mezu in part because of her race," but also "in part as retaliation against her earlier lawsuits against Morgan State

raising the claim that she was discriminated against because of her race." Am. Compl. ¶ 79. As Plaintiff correctly observes, § 1981 claims can be based upon allegations of retaliation for having filed claims or charges under Title VII. See CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457 (2008) (holding that § 1981 encompasses claims of retaliation). Thus, to the extent Plaintiff is asserting a retaliation claim in Count VI, Defendants' summary judgment motion will be denied.

With the resolution of Defendants' summary judgment motion, this action is ready to proceed to trial. Pursuant to Rule 42(a)(1) of the Federal Rules of Civil Procedure, the Court will consolidate this action with the 2009 Action for purposes of the upcoming trial. Early in this litigation, Plaintiff urged consolidation of this action with the 2009 Action, asserting, "this action concerns a continuation of the series of events that the 2009 [A]ction addresses," and citing "the convenience of all the parties and for the sake of efficiency, as well as a more economical use of judicial resources." ECF No. 20. While the Court voiced its agreement that "it makes logical sense to try these actions together as they are clearly part of a continuing pattern of events and [the 2009 Action] provides a necessary context for [this action]," the Court declined to consolidate the action at that time, not wanting the progress of

13

discovery in this action to delay the resolution of the 2009 Action. ECF No. 23, 3/22/12 Letter Order. Now that both actions are in the same procedural posture, there is no reason not to try them together. While Plaintiff has now reversed herself and, for whatever strategic reason, argues against consolidation, ECF No. 208, the Court continues to believe, as Plaintiff once did, that these actions are most efficiently tried together, even more so now that this action is limited to an action for retaliation for Plaintiff's filing of the 2009 Action.

As the parties prepare for trial, it might be helpful to review which claims remain in these two actions. In the 2009 Action, Plaintiff's primary claims are her "FMLA Interference" claim related to Defendants' handling of Plaintiff's request for leave to take care of her daughter, Olachi, during the Fall 2009 Semester, 2009 Action, Am. Compl., ECF No. 42 (Count II), and her closely related "FMLA Retaliation" claim in which she alleges Morgan State failed to timely pay her salary once she returned from that leave. Id. (Count III). Also remaining for trial is Plaintiff's Title VII Retaliation claim, in which she alleges Morgan State retaliated against her in various ways for filing her first two civil actions and for filing another discrimination charge with the EEOC in July of 2009. Id. (Count

I).  The Court permitted Plaintiff to go forward with this claim even though the claim directly alleging discrimination, Plaintiff's Title VII hostile environment claim, was dismissed. See 2009 Action, 3/18/10 Mem., ECF No. 24 at 23-26.  The Court noted that Plaintiff's allegations of discriminatory conduct did not need to be "objectively reasonable" in order to permit her to bring a retaliation claim under Title VII's participation clause.  2009 Action, 7/29/13 Mem., ECF No. 196 at 25.  The Court has also ruled that Morgan State is the only remaining Defendant in the 2009 Action.  See 2009 Action, 3/18/10 Mem. at 30 n.15.

As set out above, in this action, Plaintiff's remaining claims simply allege new incidents of retaliation against her for having filed her previous Title VII suit and charges.  Count I is asserted against Morgan State under Title VII, and Count VI is asserted against Defendant Hubbard under § 1981 based upon much of the same alleged conduct.  Thus, to be clear, there are no viable discrimination claims in either action.  What remains is an FMLA Interference claim, and claims asserting retaliation for Plaintiff's pursuit of FMLA benefits and asserting claims of discrimination under Title VII.

A separate order consistent with this Memorandum will issue.

                            _____/s/_____
                            William M. Nickerson
                            Senior United States District Judge

Dated:  April 16, 2014