IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROSE URE MEZU                    *
                                 *
                                 *
v.                               *    Civil Action No. WMN-09-2855
                                 *
                                 *    Civil Action No. WMN-11-3072
MORGAN STATE UNIVERSITY          *
    et al.                       *
                                 *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM AND ORDER

The two above captioned actions have been consolidated for
the purpose of trial which is set to begin on June 2, 2014.[1]
Before the Court are numerous motions in limine.  Defendants
have filed two motions to exclude, in part, the testimony of
Plaintiff's expert, Dr. Colin Linsley.  ECF Nos. 215 and 225.
Plaintiff has filed a motion to limit the trial of her Family
and Medical Leave Act (FMLA) interference claim to just her
proof of damages based on her contention that liability cannot
be disputed.  ECF No. 217.  Plaintiff has also filed a motion
seeking either adverse inference instructions or limitation of
Defendants' evidence based on Defendants' alleged spoliation of

---

[1] With this Memorandum and Order, the Court will also consolidate
these actions for all purposes.  Henceforth, Civil Action No.
WMN-09-2855 will be deemed the lead case and all pleadings will
be filed in that action only.  Except where otherwise noted, all
references to the docket in this Memorandum and Order are
references to ECF Nos. in Civil Action No. WMN-09-2855.

evidence.  ECF No. 221.  In addition, Plaintiff filed a motion
in limine to exclude evidence regarding her daughter's marriage
and divorce, and any evidence or testimony regarding the
opinions of Dr. James Conway.  ECF No. 227.  Finally, Defendants
have filed a motion for summary judgment on Plaintiff's 42
U.S.C. § 1981 claim against Defendant Dolan Hubbard in light of
Plaintiff's recent abandonment of her claim that she was
assigned "course overloads."  ECF No. 240.  A hearing was held
on these motions on May 29, 2014.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This litigation has been pending for more than four years
and this Court has issued numerous opinions in the course of
these proceedings.  In order to provide context for the pending
motions, the Court finds it helpful to review the claims that
were initially brought in these actions, the claims that the
Court has dismissed or on which the Court has granted summary
judgment, the claims that have been abandoned by Plaintiff, and
the claims that remain.  While the Court will not repeat a
detailed factual background for Plaintiff's claims and assumes
the reader's familiarity with these actions, the Court will
outline the general scope of the remaining claims.

In the Amended Complaint in Civil Action No. WMN-09-2855
(the 2009 Action), ECF No. 42, Plaintiff asserts an "FMLA

Interference" claim (Count II) related to Defendants' handling of her request for leave to take care of her daughter, Dr. Olachi Mezu, during the Fall 2009 Semester.  Olachi suffered a ruptured cerebral aneurysm and had to undergo emergency brain surgery, followed by a significant period of recovery. Plaintiff brings a closely related "FMLA Retaliation" claim (Count III) in which she alleges that Defendant Morgan State University (MSU) failed to timely pay her salary once she returned from that leave.  Also remaining for trial in the 2009 Action is Plaintiff's Title VII Retaliation claim (Count I), in which she alleges that MSU retaliated against her in various ways for filing two previous civil rights actions against MSU, Mezu v. Morgan State Univ., Civ. No. JFM-02-3713, and Mezu v. Morgan State Univ., Civ. No. WDQ-08-1867, and for filing another discrimination charge with the EEOC in July of 2009.  The Court permitted Plaintiff to go forward with this claim even though the claim directly alleging discrimination, Plaintiff's Title VII hostile environment claim, was dismissed.  See 2009 Action, 3/18/10 Mem., ECF No. 24 at 23-26.  Of note, MSU is the only remaining Defendant in the 2009 Action as the claims against the individual defendants, Armada Grant and Dolan Hubbard have been dismissed.  See id at 30 n.15.

In the First Amended Complaint in Civil Action No. WMN-11-3072 (the 2011 Action), ECF No. 24, Plaintiff brings a Title VII retaliation claim against MSU (Count I) alleging new incidents of retaliation against her for having filed her previous Title VII suits and charges.  The principal allegation in support of this claim was that, after returning from her FMLA leave in December 2009, she was repeatedly assigned to teach course overloads beginning in the Spring 2010 Semester.  Plaintiff also brought FMLA Interference and Retaliation claims based upon her attempts to obtain half time leave to recover from the stress attendant to the alleged course overload.  These claims were dismissed under Coleman v. Maryland Court of Appeals, 626 F.3d 187 (2010), in which the Fourth Circuit held that, unlike the FMLA "family care" provisions asserted in the 2009 Action, states were immune from suit under the FMLA "self care" provisions.

In a recent decision on cross motions for summary judgment in the 2011 Action, the Court dismissed two 42 U.S.C. § 1983 claims, one against Defendant Grant (Count IV) and one against Defendant Hubbard (Count V), finding that Plaintiff had provided no evidence to support the allegations that she was discriminated against on the basis of her "race, color, religion, sex, or national origin."  2011 Action, ECF No. 93 at

12.   The Court also dismissed Plaintiff's 42 U.S.C. § 1981 claim against Defendant Hubbard (Count VI), to the extent it was based on any claim of racial discrimination.   Id.   It permitted the claim to go forward, however, to the extent it was premised on the allegation that "Hubbard interfered with [MSU]'s contractual duties to [Plaintiff] . . . as retaliation for her earlier lawsuits against MSU."   Id. at 13.

As hinted in recent filings and confirmed by counsel in the recent pretrial conference held in chambers, Plaintiff has decided to abandon the allegation that she had been assigned course overloads.   The Court has previously questioned Plaintiff's ability to support that allegation, see 2011 Action, ECF No. 32 at 11 and ECF No. 93 at 4-7, but permitted the claim to go forward in the absence of any reply from Defendants to challenges that, in the Court's view, clearly warranted a response.   2011 Action, ECF No. 93 at 7.   In response to Plaintiff's abandonment of the course overload allegation, Defendants have filed a motion for summary judgment on the § 1981 claim.   That motion will be granted for the reasons discussed below.

Thus, there are three causes of action remaining for trial, Plaintiff's FMLA interference and retaliation claims in the 2009

Action and her Title VII retaliation claims that bridge both the 2009 and 2011 Actions.

## II. MOTIONS IN LIMINE

### A. Defendants' Re: Dr. Colin Linsley, ECF Nos. 215 and 225

Dr. Colin Linsley is Plaintiff's designated expert on damages.  In Defendants' first motion concerning Dr. Linsley, ECF No. 215, Defendants seek to exclude that portion of Dr. Linsley's report that Defendants characterize as relating to "damages resulting from Dr. Mezu's failure to be promoted to the rank of full professor, from associate professor, in 2006."  ECF No. 215 at 1.  Defendants argue that these damages are premised on Plaintiff's Title VII discrimination claims, which, as the Court has noted, were dismissed.  Thus, in Defendants' view, evidence and opinions related to these damages are irrelevant and should be excluded.

Plaintiff responds that the damages detailed in Dr. Linsley's report that Defendants seek to exclude are related to her Title VII retaliation claims, which are still viable. Plaintiff alleges that she was retaliated against for filing previous Title VII charges and suits, including her 2002 and 2008 suits.  Plaintiff further asserts that, because of this prior protected activity, she was denied a promotion in 2006 and, as significantly, in the years that followed and up to the

6

present, has been paid much less than other similarly qualified professors in her department.  ECF No. 42 at ¶ 87.  Dr. Linsley's report simply quantifies the loss in back pay due to this salary differential and the loss in front pay should this inequitable pay structure remain in place until Plaintiff's anticipated retirement at the age of 75.

Because this portion of Dr. Linsley's report is relevant to Plaintiff's Title VII retaliation claim, Defendants' motion, ECF No. 215, will be denied.

Defendants' second motion challenging the expert opinion of Dr. Linsley relates to his calculation of damages caused by the failure of MSU to timely return Plaintiff to the payroll when she returned from her FMLA leave in December 2009.  Although this lost salary was eventually recovered by Plaintiff, Dr. Linsley opines that Plaintiff sustained damages including, being dropped from a mortgage program with an advantageous interest rate, and experiencing losses resulting from the lowering of her credit score caused by missed bill payments during the time Plaintiff was not receiving a salary.  Defendants suggest that Dr. Linsley is not qualified to render this latter opinion and that this opinion is not reliable.  With her opposition to this

motion, Plaintiff submitted further "Comments" from Dr. Linsley discussing his qualifications and methodology.  ECF No. 238-1.[2]

Subject to further questioning on voir dire when he is offered at trial, the Court finds that Dr. Linsley is sufficiently qualified to render his opinion regarding the financial impact of a lower credit score.  While he may have never previously offered an opinion on the precise issue of damages in this particular context, he does have a PhD in economics, is a Certified Public Accountant, and has a CVA certificate issued by the National Association of Certified Valuation Analysts.  The opinion offered would thus appear to be within the scope of his expertise.

As to the method he used to calculate damages, Defendants question his reliance on FICO[3] calculators and the website "Credit Karma" for sources of his data and his failure to use data specific to Plaintiff in his calculations.  Again, subject to further inquiry, the Court finds his methodology sound.  Dr. Linsley explains that FICO is the single best source of information for the effect of missed payments on credit scores

---

[2] Defendants complain that this submission is in reality a second expert opinion and should not be considered.  The Court finds it is consistent with his prior opinion and simply explains his credentials and methodology in a little more detail, as he would when he takes the witness stand.

[3] Fair, Isaac, and Company.

and that Credit Karma maintains a website that simply collects
and reports interest rates offered by various lenders –
information that is readily verifiable.  The Court does have
some concerns, however, regarding Dr. Linsley's apparent use of
generic data as opposed to more specific data reflecting
Plaintiff's actual financial situation at the time MSU failed to
return her to the payroll.

Notwithstanding that last concern, it appears, for the most
part, that the issues raised by Defendants go to issues of the
weight, not the admissibility, of Dr. Linsley's opinions.  To
address that last concern, however, the Court will permit some
preliminary voir dire of Dr. Linsley prior to his testimony
before the jury.  At this juncture, Defendants' second motion
related to Dr. Linsley's testimony, ECF No. 225, will be denied,
subject to renewal.

### B. Plaintiff's Re: FMLA Interference claim, ECF No. 217

In what is more in the nature of a renewed motion for
partial summary judgment, Plaintiff asks that the Court
"streamline the trial" by foreclosing attempts by Defendants to
present evidence challenging "the fact that all five elements of
Dr. Mezu's [FMLA] interference claim have been established and
thus, on that claim, the only relevant issues are those of what
damages, if any, she suffered from her employer, [MSU], engaging

in that interference." ECF No. 217-1 at 1. In ruling on
Plaintiff's previous motion for partial summary judgment, the
Court held that to establish an FMLA interference claim, a
plaintiff must prove: (1) she was an eligible employee, (2) her
employer is a covered employer, (3) she was entitled to leave
under the FMLA, (4) she gave her employer notice of her intent
to take leave, and (5) her employer denied her FMLA benefits or
interfered with FMLA rights to which she was entitled. ECF No.
196 at 8 (citing Hoge v. Honda of Am. Mfg., Inc., 384 F.3d 238,
244 (6th Cir. 2004)).

There is no dispute as to the first two elements. As to
the remaining three, the Court opined that there was strong
evidence to establish each element. As to Plaintiff's
entitlement to leave, the Court opined that, "[w]hile there may
be a dispute of fact as to exactly how long [Plaintiff's
daughter] experienced a serious health condition that rendered
her incapable of self-care, the record indicates that, at least
for a significant period of time after the surgery, she needed
her mother's assistance." Id. at 13. On the issue of notice,
the Court observed that, while there were some initial problems
with the certification submitted by Plaintiff, id. at 14,
"[c]ertainly at some point, at least by October 2, 2009,
Plaintiff had given Morgan State sufficient notice of her need

10

for FMLA leave." Id. at 16.  Finally, on the issue of actual
interference with Plaintiff's rights, the Court observed that,
based upon a comparison of the manner in which MSU treated
Plaintiff's FMLA leave request with the manner in which it
treated requests from other employees, "a finder of fact could
conclude that [MSU] was simply making Plaintiff jump through
hoops through which no one else was required to jump." Id. at
16.

     The Court ultimately denied Plaintiff's motion for partial
summary judgment on the issue of FMLA interference liability, in
part, on the ground that the record was not as clear as it could
be in establishing that Plaintiff suffered prejudice as a result
of Defendants' actions.[4] Id. at 20.  The Court noted that "the
FMLA 'provides no relief unless the employee has been prejudiced
by the violation.'" Id. at 18 (quoting Ragsdale v. Wolverine
World Wide, Inc., 535 U.S. 81, 89 (2002)).  Even on that issue,
however, the Court opined that "it seems inconceivable that
Plaintiff would not have suffered substantial economic harm as a
result of losing pay and benefits for more than a month." Id.
at 19.

---

[4] Plaintiff explained that she did not submit evidence regarding
damages because she was only moving for judgment as to
liability.

As this summary of the Court's previous ruling reveals, it is the Court's belief that Plaintiff is likely to prevail on her FMLA interference claim.  Nevertheless, there are disputes of material fact that render the entry of judgment, even on the limited issue of liability, inappropriate.  It is not clear for how long Plaintiff's daughter continued to need care, it is not clear at what point Plaintiff's notice to MSU was sufficient, and a fact finder could conclude, after hearing the testimony of the decision makers, that the requests for additional information for certification was justified under the particular circumstances presented.  Furthermore, even granting Plaintiff's motion would not necessarily "streamline" the trial, as much of the same evidence that would establish liability might also go to the scope of Plaintiff's resulting damages.

Plaintiff's motion regarding FMLA liability, ECF No. 217, will be denied.

## C. Plaintiff's Re: Spoliation of Evidence, ECF No. 221

In this motion, Plaintiff seeks sanctions based upon what she views as Defendants' egregious failure to preserve and/or refusal to produce relevant documents requested in discovery. There are three particular groups of documents at issue.

The first group relates to a document referenced in a December 5, 2009, memo from Defendant Hubbard to Burney Hollis,

12

a dean at MSU, that was copied to Armada Grant, asking when pay should resume for Plaintiff.  This memo references a November 23, 2009, letter about her pay that Plaintiff complains has never been produced.  Plaintiff also complains that no written response to this memo has ever been produced.

Defendants responded and now represent that Hubbard simply made a clerical error in the December 5, 2009, memo and meant to reference a November 13, 2009, letter from Grant to Plaintiff. Defendants submitted a November 13, 2009, letter, ECF No. 239-1, along with an affidavit from Hubbard, dated May 23, 2014, in which he states, "[u]pon review of my December 5, 2009 memo addressed to Dr. Burney J. Hollis and Armada Grant's November 13, 2009 letter, I realized that I inadvertently typed 'November 23, 2009' when I referred to Ms. Grant's letter in the parenthetical.  The correct date is November 13, 2009."  ECF No. 239-2.

In her reply, Plaintiff notes numerous technical deficiencies in Defendants' opposition, including the fact that Hubbard provided an electronic and not an actual signature.  At the hearing on the motions, Defendants presented a properly signed affidavit.  Plaintiff certainly suffered no prejudice from the alleged technical deficiencies in Defendants' submission in opposition.

As to the substance of Defendants' opposition, Plaintiff notes that this letter has been a subject of dispute for three and a half years, including questions asked in the depositions of both Grant and Hubbard.  At no time did Defendants offer the explanation that it now advances, that it was a simple clerical error.  Plaintiff strongly suggests that this newly minted explanation is fraudulent.  ECF No. 242 at 3.

Reviewing the November 13, 2009, letter, the Court finds it highly likely that Hubbard was referring to that letter in his December 5, 2009, memo.  Plaintiff can certainly question Hubbard about the "missing" November 23, 2009, letter and the jury can gauge the credibility of his explanation.  There is no evidence of spoliation, however, that would warrant any instruction to the jury on this issue.

The second group of documents that Plaintiff references in her motion are documents related to the FMLA requests of other MSU employees.  Grant was questioned in her deposition about an FMLA request that was granted even though it was supported, in Plaintiff's view, by considerably less information than Plaintiff's request.  Grant responded that at "the time in which I made that decision, I must have had sufficient documentation." Grant Dep. at 162.  Grant responded in a similar manner to other questions regarding FMLA leave requests that were approved on

14

minimum certification, implying that she must have had additional information when she approved those requests. Id. at 157, 177. Plaintiff complains that Defendants did not produce this additional medical support for these other leave requests in discovery. Plaintiff argues that Defendants should be precluded from suggesting, implying, or arguing that MSU had any additional documentation when it approved the leave request of other employees beyond that which has been produced to Plaintiff. Although Defendants filed what it captioned as an omnibus response to all of Plaintiff's limine motions, they offered no written response on this issue. In the hearing, Defendants represented that they have indeed produced the complete FMLA files.

The Court agrees with Plaintiff, and Defendants do not appear to contest, that Defendants should be limited on this issue to the documents produced in discovery. Furthermore, Defendants will not be permitted to imply that there was other information available at the time the leave requests were granted. Thus, the motion will be granted as to this issue.

The third group of documents that were allegedly missing from discovery relate to testimony given in this case by a former Dean of MSU's College of Liberal Arts, Adele Newson-Horst. Newson-Horst testified that she was specifically

instructed, in writing, from MSU's Provost, Joan Robinson, not to respond to the many inquiries she was receiving from Plaintiff about her teaching overload.  ECF No. 221-4, Newson-Horst Dep. at 11.  Newson-Horst has represented to Plaintiff's counsel that, when she left her post as Dean, she left these documents in the Dean's office.  The documents have not been produced.  Defendants contend that they conducted a good faith search for these documents and that "it does not possess the documents referenced by Dr. Newson-Horst – perhaps, none ever existed."  ECF No. 239 at 4.

While Defendants' failure to produce these documents is perhaps suspect, there is no actual evidence of spoliation.  The Court must deny this motion as to these documents.  Even without the documents, of course, Plaintiff will have the testimony of Dr. Newson-Horst that she received written instructions not to respond to Plaintiff's concerns.

**D. Plaintiff's Re: Olachi's Marriage and the Testimony of Dr. Conway, ECF No. 227**

In this motion, Plaintiff seeks to exclude two areas of evidence.  The first relates to Plaintiff's daughter's marriage and divorce.  Defendants believe this is potentially relevant based on their conclusion, repeated throughout this litigation, that Olachi was able to "return to her marital home, without her mother," five days into Plaintiff's requested leave period.  See

16

ECF No. 168-1 at 9-10.  Citing testimony given in Olachi's
divorce proceeding, Defendants recount various activities in
which Olachi was able to participate during the period of time
shortly after she is alleged to have returned home.

Based on the current record, the Court agrees that this
evidence is irrelevant.  None of this information was known to
Defendants at the time Plaintiff's leave request was denied and
thus, could not have entered into that decision.  While it might
perhaps be admissible for impeachment purposes, that
determination is premature.  In the meantime, Defendants are
precluded from introducing and supporting their decision to deny
Plaintiff's FMLA claim with any evidence not in their possession
when the actual decision was made.  This includes information
somehow obtained from Olachi's divorce proceedings.

The second area of evidence addressed in this motion
relates to an affidavit of Dr. James Conway.  When this case was
before then-Magistrate Judge Grimm for discovery, Defendants
submitted an affidavit of Dr. Conway in which he stated that Dr.
Huang's certification and the medical records that Plaintiff
submitted to MSU in connection with her leave request were
insufficient for him to make the judgment as to whether Olachi
needed assistance.  Judge Grimm requested that affidavit as a

17

prerequisite to his permitting Defendants to obtain additional
medical records regarding Olachi's treatment.

Because the adequacy of Plaintiff's certification is a
central issue in this action, the Court will permit Defendants
to introduce the affidavit of Dr. Conway and permit him to
testify concerning the adequacy of the certification material
submitted to MSU at the time it rendered its decision regarding
Plaintiff's leave request. Like the evidence obtained from
Olachi's divorce proceeding, however, medical records obtained
through discovery in this action are not admissible because they
could not have informed that decision.[5]

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In light of Plaintiff's abandonment of her "course
overload" allegations, Defendants contend that Hubbard is now
entitled to summary judgment on Plaintiff's § 1981 claim against
him. Plaintiff responds that the motion is untimely and that
her § 1981 claim against Hubbard was broader than just the
course overload allegations. The Court concludes that Defendant

---

[5] It is true that the Court permitted the discovery of these
additional records. What is discoverable, however, is broader
than what is admissible. Kidwiler v. Progressive Paloverde Ins.
Co., 192 F.R.D. 193, 199 (N.D.W. Va. 2000) ("Relevance for
discovery purposes is defined more broadly than relevance for
evidentiary purposes.").

Hubbard is entitled to summary judgment on the § 1981 claim asserted against him in the 2011 Action.

Plaintiff's timeliness argument has no merit.  Plaintiff's abandonment of the course overload allegations was not clear until the pretrial conference and Defendants filed their motion as soon as practical thereafter.  As to the merits of the motion, Defendants are correct that Hubbard's alleged imposition of a course overload was the gravamen of the § 1981 claim against Hubbard.  The only alleged conduct specifically referenced in this count is that "Hubbard has consistently, every semester since the Spring Semester of 2010, caused Morgan State to breach its contractual obligations under [the MSU] Faculty Manual by imposing additional work on Dr. Mezu over that denominated as full teaching load."  ¶ 78.

The § 1981 count (Count VI) did incorporate by reference the remaining allegations in the First Amended Complaint.  The additional allegations against Hubbard in the 2011 Action, however, are limited to his sending an email that Plaintiff believes cast her in a negative light, First Am. Compl. ¶¶ 31-35, and his interactions with Plaintiff's students informing them of their rights to fill out a complaint against her and later criticizing her in front of one of her classes.  Id. ¶¶ 35-38.  Those allegations, however, uncoupled from the

allegation that Plaintiff was forced to teach an overload

without compensation, are simply insufficient to rise to the

level of an adverse employment action.[6]  See Clarke v. Dyncorp

Int'l LLC, 962 F. Supp. 2d 781, 791 (D. Md. 2013).

For all the above stated reasons, it is the 30th day of

May, 2014, by the United States District Court for the District

of Maryland, ORDERED:

1) That Defendants' Motion in Limine to Exclude, in Part,

Testimony of Plaintiff's Expert Witness, Dr. Colin Linsley, ECF

No. 215, is DENIED;

2) That Defendants' Second Motion in Limine to Exclude

Testimony of Plaintiff's Expert Witness, Colin Linsley, PhD,

C.P.A. at Trial, ECF No. 225, is DENIED, subject to renewal as

explained above;

3) That Plaintiff's Motion in Limine Concerning Her FMLA

Interference Claims, ECF No. 217, is DENIED;

4) That Plaintiff's Motion in Limine Concerning Spoliation

of Evidence, ECF No. 221, is GRANTED in part and DENIED in part,

in that:

---

[6] In ruling on the previous summary judgment motion, the Court
questioned whether "these incidents would independently support
a retaliation claim," but permitted the claim to go forward
concluding that the "combined effect" of all the alleged events,
including the course overload, could dissuade a reasonable
worker from engaging in the protected activity.  ECF No. 93 at
9.

a) Defendant MSU shall not be permitted to introduce into evidence any document related to FMLA requests of other MSU employees that were not produced to Plaintiff in discovey;

b) Defendant MSU's witnesses, specifically Ms. Armada Grant, shall not be permitted to testify concerning any documents used to determine FMLA leave eligibility except for those documents produced to Plaintiff in discovery; and

c) the motion is otherwise denied;

5) That Plaintiff's Motion in Limine to Exclude Testimony Regarding Olachi [Mezu]'s Marriage, Deposition and Other Testimony Regarding Olachi's Marriage and the Testimony/Affidavit of Dr. Conway, ECF No. 227, is GRANTED in part and DENIED in part, in that:

a) the motion is denied as to Dr. Conway's Affidavit and Testimony as it relates to the adequacy of information possessed by MSU at the time it rendered its decisions on Plaintiff's FMLA leave request; and

b) the motion is otherwise granted;

6) That Defendants' Motion for Judgment on Plaintiff's 42 U.S.C. § 1981 Claim against Dolan Hubbard, PhD, ECF No. 240, is GRANTED;

     7) That Civil Action Nos. WMN-09-2855 and WMN-11-3072 are hereby consolidated for all purposes and all further pleadings shall be filed in Civil Action No. WMN-09-2855; and

     8) That the Clerk of the Court shall transmit a copy of this Memorandum and Order to all counsel of record.


                      _____/s/_____
                      William M. Nickerson
                      Senior United States District Judge